Joe Lucarini *v.* The State.

(*Nashville.* December Term, 1928.)

Opinion filed July 19, 1929.

JOHN T. McCALL, for plaintiff in error.

NAT TIPTON, Assistant Attorney-General, for the State.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

Joe Lucarini was convicted of the unlawful possession of intoxicating liquor and has appealed to this court. A reversal is asked upon the ground that the evidence was obtained by an illegal search.

Lucarini operates a restaurant in the front end of a building on Crawford Street in the city of Nashville, and occupies the back end as a residence. On the night in question he closed his restaurant about 9 o'clock and, joined by some friends, retired to the kitchen.

A little later a squad of officers, in passing the building, heard some loud talking. They left the street and walked over Lucarini's private premises to the kitchen door, where they peeped through a crack in the door, and saw Lucarini and his friends pouring something from a bottle and drinking it. They returned to the front door which they entered as two parties on the inside were leaving. Upon entering the kitchen they saw glasses and smelled whisky. A search was instituted and a half pint of whisky was found in Lucarini's bedroom.

The State does not insist that any breach of peace was committed or threatened in the presence or hearing of the officers that justified them in trespassing upon Lucarini's property. In fact, the officers admitted that they did not understand a word that was said and they did not testify that any of the inmates were intoxicated or disorderly, and it is quite evident that their purpose in peeping through the kitchen door was to discover what they actually found. The officers had no search warrant.

The State relies upon Cohn v. State, 120 Tenn., 61, in which it was held that the unreasonable search and seizure against which the constitutional provision was designed to operate did not apply to petty officers of the law. That case has not been followed since the decisions in *Gouled* v. *United States,* 255 U. S., 298, 65 L. Ed., 647, and *Amos* v. *United States,* 255 U. S., 314, 65 L. Ed., 654. The effect of the decision in *Hughes* v. *State,* 145 Tenn., 544, was to overrule that part of the opinion in *Cohn* v. *State.*

In an unreported case from Rutherford County this court held that where officers, without a search warrant, entered private premises and, looking through a window in the residence, discovered parties engaged in gambling, the evidence thus obtained was illegal.

There are numerous decisions to the same effect by other state courts.

The latest utterance upon the question by the Supreme Court of the United States is that contained in *Agnello* v. *United States,* 269 U. S., 20, 70 L. Ed., 145, 51 A. L. R., 409. Officers, looking through a window of the residence of Alba, witnessed a sale of cocaine, the money being paid to Alba. The officers rushed in and

arrested the parties. They had no search warrant. The court held the evidence thus obtained illegal and incompetent as to Alba. The court, speaking through Mr. Justice BUTLER, said:

"While the question has never been directly decided by this court, it has always been assumed that one's house cannot lawfully be searched without a search warrant, except as an incident to a lawful arrest therein. (Citing authorities.) The protection of the 4th Amendment extends to all equally,—to those justly suspected or accused, as well as to the innocent. The search of a private dwelling without a warrant is, in itself, unreasonable and abhorrent to our laws. Congress has never passed an act purporting to authorize the search of a house without a warrant. On the other hand, special limitations have been set about the obtaining of search warrants for that purpose. . . . Safeguards similar to the 4th Amendment are deemed necessary and have been provided in the constitution or laws of every state of the Union. We think there is no state statute authorizing the search of a house without a warrant; and, in a number of state laws recently enacted for the enforcement of prohibition in respect of intoxicating liquors, there are provisions similar to those in section 25 of the National Prohibition Act. Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, Federal or state, for the search of a private dwelling house without a warrant. Absence of any judicial approval is persuasive authority that it is unlawful. See Entick v. Carrington, 19 How. St. Tr., 1030, 1066. Belief, however well founded, that an article sought is concealed in a dwelling house, furnishes no justification for a search of that place without a war-

rant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause.''

In *Thomas* v. *Commonwealth* (Ky.), 10 S. W. (2d), 606, a son of Thomas, being apprehensive about the safety of his mother, procured officers to enter the Thomas home to see about her. While there they discovered whisky and arrested the elder Thomas for being drunk. At the request of the mother they returned later to fix a door and windowpane that were broken on their first visit and discovered other whisky. All of the evidence as to whisky was held to have been illegally obtained.

We have found no decisions taking a contrary view. A man's home is his castle and cannot be invaded or searched without a warrant. The courts of the land have uniformly discountenanced all attempts on the part of officers to evade this sacred right upon various pretexts and subterfuges.

■ The State insists, however, that, with the testimony of the officers excluded, the accused has made out a case against himself by testifying that there was a half pint of whisky in his bedroom, and cites *Hood* v. *State,* 148 Tenn., 265.

To this we cannot agree. After Officer Williams had testified to finding a half pint of whisky in Lucarini's bedroom, Lucarini went upon the stand and testified that if the officer *did find* the whisky in his room he did not place it there, knew nothing about it, and that it did not belong to him. That is quite different from saying that the whisky was in his bedroom. With the testimony of the officer excluded, there is no testimony that there was any whisky in Lucarini's bedroom.

Since the constitutional right of the plaintiff in error was invaded, and the evidence illegally obtained upon which he was convicted, we find it necessary to reverse the case and remand it for a new trial.